UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY M. GRAHAM, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>VCA ANTECH, INC., et al.,<br><br>　　　　Defendants. | Case No. 14-cv-02158-MEJ<br><br>**ORDER RE: MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 35 |

## I. INTRODUCTION

　　Pending before the Court is the Motion to Transfer Venue brought by Defendants VCA Inc. and VCA Animal Hospitals, Inc. ("Defendants"). Dkt. No. 35. Plaintiffs Tony M. Graham and Pamela G. Moe ("Plaintiffs") have filed an Opposition (Dkt. No. 42). Pursuant to stipulation of the parties (Dkt. No. 43), the Court finds this matter suitable for disposition without oral argument and VACATES the November 20, 2014 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion for the reasons set forth below.

## II. BACKGROUND

　　This case is a putative class action, asserting eleven causes of action on behalf of a proposed nationwide class. Compl., Dkt. No. 25. The following facts are drawn from the operative Complaint. Named Plaintiff Tony M. Graham is a resident of Oklahoma. *Id.* ¶ 13. Named Plaintiff Pamela G. Moe is a resident of California. *Id.* ¶ 14. Defendant VCA Inc. is a Delaware corporation with its principal place of business in Los Angeles, California. *Id.* ¶¶ 5-6. Defendant VCA Animal Hospitals, Inc. is a California corporation with its principal place of business in Los Angeles, California. *Id.* ¶¶ 7-8. Plaintiff Tony Graham purchased goods and

services from Defendants through one of their facilities, located in Tulsa, Oklahoma. *Id.* ¶ 15. Plaintiff Pamela Moe purchased goods and services from Defendants through their facilities located in Corte Madeira and San Leandro, California. *Id.* ¶ 16. Plaintiffs allege that Defendants routinely and improperly imposed "Biohazard Waste Management" surcharges on the relevant transactions. *Id.* ¶¶ 17-29.

On May 12, 2014, Plaintiffs filed their initial complaint, with Tony Graham as the sole named Plaintiff. Dkt. No. 1. On August 18, 2014, Defendants filed their first Motion to Transfer this action to the Central District of California. Dkt. No. 21. On September 8, 2014, Plaintiffs amended their Complaint, adding Pamela Moe as an additional named Plaintiff, thus terminating the pending Motion. Dkt. No. 25. On October 13, 2014, Defendants filed the instant Motion, again seeking a transfer of venue to the Central District of California. Dkt. No. 35.

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a court may transfer a civil action to any other district in which the action could have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." Courts engage in a two-step process when determining whether to transfer an action. First, the trial court must determine whether the case could properly have been brought in the transferee district in the first instance. *Shabani v. Volkswagen Grp. of Am.*, 2012 WL 4675047, at *2 (N.D. Cal. Oct. 2, 2012). Once the trial court determines the propriety of the proposed transferee forum, that court must evaluate numerous factors relating to convenience and the interests of justice. *Id.* The Ninth Circuit has identified a non-exhaustive list of factors for courts to weigh:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

The trial court has broad discretion when evaluating these factors, in light of the particular

circumstances of each case. *Bibo v. Fed. Express, Inc.*, 2007 WL 2972948, at *2 (N.D. Cal. Oct. 10, 2007). For example, while a plaintiff's choice of forum is usually given great weight, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Johansson v. Cent. Garden & Pet Co.*, 2010 WL 4977725, at *2 (N.D. Cal. Dec. 2, 2010) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

## IV. DISCUSSION

Defendants move the Court to transfer venue to the Central District of California ("Central District"), arguing that this action could have been brought there in the first instance, and that the relevant factors relating to convenience and the interests of justice favor transfer. Mot. at 9-18. For the reasons that follow, the Court agrees.

### A. Propriety of Venue in the Central District

Defendants contend that this action properly might have been brought in the Central District in the first instance. Mot. at 9. Defendants maintain their headquarters and principal places of business within the Central District. Antin Decl. ¶¶ 3-4, Dkt. No. 35-1. Plaintiffs do not dispute that this action could initially have been brought in the Central District. Accordingly, the Court finds that venue would be proper in the Central District.

### B. Weighing of Factors

#### 1. Plaintiffs' Choice of Forum

Although a defendant must generally make a strong showing of inconvenience to warrant upsetting a plaintiff's choice of forum, in certain circumstances that choice is afforded less weight. *Flores v. Zale Delaware, Inc.*, 2007 WL 4462992, at *2 (N.D. Cal. Dec. 17, 2007). For example, a plaintiff's choice is given less weight in a class action, or when a plaintiff is not resident in the chosen forum. *Lou*, 834 F.2d at 739. "Furthermore, a plaintiff's choice of forum will be accorded little deference if there are indications of forum shopping." *Flores*, 2007 WL 4462992, at *2 (citation and internal quotation marks omitted).

Plaintiffs' choice of the Northern District of California ("Northern District") is entitled to less deference here because they chose to file this case as a class action. *See Lou*, 834 F.2d at 739. Additionally, only one of the two named Plaintiffs is resident in this District. Compl. ¶¶ 13-14.

Given that Plaintiffs purport to represent a nationwide class, their choice of forum is entitled to little weight.[1] *See Johns v. Panera Bread Co.*, 2008 WL 2811827, at *2 (N.D. Cal. July 21, 2008) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.")). Under the circumstances of this case, the Court finds that Plaintiffs' choice of venue should be accorded little deference.

Accordingly, the Court finds that this factor weighs only slightly against transfer.

2. Parties' Contacts With Transferee Forum

The Court also considers the contacts the parties have with both forums. Defendants maintain their principal places of business in the Central District. Antin Decl. ¶¶ 3-4. Defendants do not maintain any corporate offices in the Northern District; their only contacts with the Northern District are the presence of a number of animal hospital facilities. *Id.* ¶¶ 5-7.

Additionally, the heart of Plaintiffs' Complaint is their objections to the "Biohazardous Waste Management" fees Defendants charge, allegedly at facilities nationwide. Compl. ¶¶ 31-32. Plaintiffs allege "that the billing system used to assess the 'Biohazard Waste Management' surcharge is located in California and the billing records generated and delivered to Plaintiffs originate from and are prepared for Plaintiffs at Defendants' headquarters in California." *Id.* ¶ 29. In other words, the conduct of which Plaintiffs complain originated at Defendants' headquarters, that is, in the Central District. The Court finds that Defendants have far stronger contacts with the Central District than they do with the Northern District.

Plaintiffs, on the other hand, have no known contacts with the Central District. One named

---

[1] Defendants argue that the Court should give little weight to Plaintiffs' choice of forum because Pamela Moe was added as a named Plaintiff only to defeat a transfer of venue, indicating that Plaintiffs are engaging in forum shopping. Mot. at 10-11. The Court will not find, on this record, that Pamela Moe was added simply to defeat transfer, and therefore declines to find that Plaintiffs are engaging in forum shopping. *See Flores*, 2007 WL 4462992, at *3 (refusing to find forum shopping where plaintiffs sought leave to add resident named plaintiffs after briefing and a hearing on a motion to transfer venue).

4

Plaintiff resides in Oklahoma, the other, in the Northern District of California. *Id.* ¶¶ 13-14. Thus, Plaintiffs appear to have stronger contacts with the Northern District than they do with the Central District. However, this is a putative nationwide class action, in which Plaintiffs seek to represent individuals from all over the country, presumably including the Central District. Under these circumstances, the Court cannot say that Plaintiffs' contacts with the Northern District outweigh Defendants' strong contacts with the Central District.

Accordingly, the Court finds that this factor weighs in favor of transfer.

3. <u>Convenience of Witnesses and Parties</u>

When considering this factor, the Court should look at who the witnesses are likely to be, the nature of their testimony, and "why such testimony is relevant or necessary." *Johns*, 2008 WL 2811827, at *3 (citation and internal quotation marks omitted).

Defendants have identified the following departments within their companies wherein witnesses likely possess relevant information: (1) the Knowledge and Learning Department, located in Los Angeles, California; (2) the Pricing and Coding Department, located in Los Angeles, California; (3) the Risk Management and Safety Department, located in Los Angeles, California; and (4) the Marketing Department, located in Los Angeles, California. Antin Decl. ¶ 9. Defendants have also identified several individual potential witnesses, all of whom work at Defendants' headquarters and reside in Los Angeles. *Id.* ¶ 10. In sum, every witness Defendants identify resides in the Central District. Defendants further state that "the vast majority of all of [Defendants'] employees with knowledge of [Defendants'] practices and decisions concerning the Biohazardous Waste Management Fee, work at [Defendants'] headquarters and reside in Southern California." *Id.* ¶ 8. Transfer to the Central District would be indisputably more convenient for Defendants' witnesses.

On the other hand, one of the named Plaintiffs resides in the Northern District. Compl. ¶ 14. For her, transfer to the Central District would be less convenient. Once again, however, this is a nationwide putative class action. There may well be class member witnesses in this case who reside in the Central District. Moreover, there is no indication, with respect to putative class members who do not reside in California at all, that venue in the Central District would be any

1  more or less convenient than venue in the Northern District.  Under these circumstances, the lack
2  of convenience transfer would pose for a single named Plaintiff cannot outweigh the far greater
3  convenience the Central District provides for Defendants.

4  Accordingly, the Court finds this factor weighs heavily in favor of transfer.

5      4.        <u>Familiarity of Forum with Applicable Law</u>

6  Neither party contends that there is a difference between the Central District and the
7  Northern District in terms of their familiarity with the governing law.  The Court finds that this
8  factor is neutral.

9      5.        <u>Ease of Access to Evidence</u>

10  "Documents pertaining to defendants' business practices are most likely to be found at
11  their principal place of business." *Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at
12  *5 (N.D. Cal. Nov. 10, 2003).  Indeed, Defendants assert that they maintain all hard copy files in
13  their headquarters in Los Angeles, California.  Antin Decl. ¶ 11.  Additionally, Defendants'
14  electronic records are either maintained in computers or servers located in Los Angeles,
15  California, or are accessible from that location.  *Id.* ¶ 13.  However, Plaintiffs argue that, given
16  that discovery will likely be electronic, there would be little or no burden on Defendants to
17  produce the necessary records, even if this case remains in the Northern District.  Opp'n at 13.
18  The Court agrees that ease of access to evidence will not be greatly impacted by either venue.

19  Accordingly, the Court finds that this factor is neutral.

20      6.        <u>Relative Costs of Litigation</u>

21  "Generally, litigation costs are reduced when venue is located near most of the witnesses
22  expected to testify or give depositions." *Italian Colors Rest.*, 2003 WL 22682482, at *5.  The
23  Court has already concluded that most of the witnesses and most of the evidence are physically
24  located within the Central District.  Additionally, although permitting this case to remain in the
25  Northern District might not impact the ease of access to evidence, it might well impact the costs of
26  litigation if Defendants are required to transfer all needed files and hard copy documents from Los
27  Angeles, California to the Northern District.  The Court finds that the cost of litigation is likely to
28  be lower if venue is transferred.

Plaintiffs argue that the Central District is more congested than the Northern District (Opp'n at 7); the Court takes this as an argument that this litigation is likely to be more drawn out if transferred to the Central District, and therefore more expensive. While it is true that considerably more cases were filed in the Central District in 2014 than in the Northern District, the median time from filing to resolution in the Central District was only 5.8 months, compared to 8.1 months in the Northern District. *See* http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2014/tables/C05Mar14.pdf. Thus, the Court finds that the relative congestion of the Central District is not likely to raise litigation costs due to its comparatively quick resolution time.

Accordingly, the Court finds that this factor weighs in favor of transfer.

7. Local Interest in the Controversy

Both the Northern District and the Central District have an interest in this controversy. The Northern District's interest stems from the fact that one of the named Plaintiffs engaged in relevant transactions within the District. Compl. ¶ 16. The Central District's interest stems from the fact that Defendants' headquarters and principal places of business are located there. *Id.* ¶¶ 5-8.

Accordingly, the Court finds that this factor is neutral.

## V. CONCLUSION

The Court has found that only one factor – the Plaintiffs' choice of forum – weighs against transfer, and that only slightly. The remaining factors either weigh in favor of transfer or are neutral. Therefore, based on the analysis above, Defendants' Motion to Transfer this action to the Central District of California is GRANTED. The Clerk shall transmit the file to the clerk in that District.

**IT IS SO ORDERED.**

Dated: October 31, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge